# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY MORENO,<br><br>Plaintiff,<br><br>v.<br><br>DAVID MEDINA, et al.,<br><br>Defendants. | Case No. 1:11-cv-00784-SAB<br><br>ORDER SCREENING COMPLAINT AND DISMISSING PLAINTIFF'S CLAIMS, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>ECF NO. 1<br><br>THIRTY (30) DAY DEADLINE |

## I.

## INTRODUCTION

Plaintiff Mark Anthony Moreno ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983. Plaintiff filed the original complaint in this action on May 16, 2011. (ECF No. 1.)

For the reasons set forth below, the Court finds that Plaintiff's complaint fails to state any cognizable claims. The Court will dismiss Plaintiff's claims, with leave to amend.

## II.

## SCREENING

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or

1

that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### PLAINTIFF'S COMPLAINT

The events described in Plaintiff's complaint took place while Plaintiff was incarcerated at Tehachapi State Prison CCI ("CCI-Tehachapi") and High Desert State Prison ("HDSP"). Plaintiff names an unnamed warden at CCI-Tehachapi, David Medina (physician's assistant, HDSP), James Hoag (dentist, HDSP), C. Hopson (dentist, CCI-Tehachapi), A. Haggar (dentist, CCI-Tehachapi), Shari Lowen (deputy director of the dental program services division, CCI-Tehachapi), Jeff Matthews (dentist, CCI-Tehachapi), D. Swingle (chief medical officer, HDSP), and Brian Grimm (doctor, CCI-Tehachapi) as defendants in this action (collectively referred to as "Defendants").

On December 24, 2008, while Plaintiff was incarcerated at HDSP, Plaintiff filled out an emergency dental care service request form. (Compl. 4.[1]) On December 26, 2008, Plaintiff was seen by Dr. James Hoag at the dental clinic and received x-rays. (Compl. 4.) Plaintiff alleges that the x-rays showed that one of Plaintiff's teeth had to be extracted because it was cracked in two places and was infected. (Compl. 4.) Plaintiff further alleges that if the tooth was not extracted, Plaintiff would suffer pain and could cause further damage to the surrounding teeth and gums. (Compl. 4.)

Hoag allegedly told Plaintiff that, "since [Plaintiff] had seizures in the pas[t], [Hoag] would need to get an approval from medical to remove [Plaintiff's] cracked tooth." (Compl. 4.) Hoag told Plaintiff that it would take one to three days because it was "a priority & emergency." (Compl. 4.) Plaintiff then walked across the hall to ask David Medina for assistance. (Compl. 4.) Medina then came back with Hoag and explained that he would not give clearance for any tooth extraction because "he's not clearing this medical extraction that he knows [Plaintiff] really need[s]" because "he looked in [Plaintiff's] entire medical file and could not find nothing ment[ion]ing or any documentation stating [Plaintiff] ever had a seizure."[2] (Compl. 7.) Plaintiff contends that "now before you get any dental work done you need to get the (MRI) to see if you have seizure disorder or not." (Compl. 7.)

Plaintiff contends that Hoag "showed deliberate indifference to Plaintiff's serious medical needs knowing he was in need of this clearance & MRI, which he did not act up on it which defendant should of told his supervisor with the dental care at [HDSP] if there wasn't a (MRI) machine at this prison to have Plaintiff taken to the outside hospital to have the MRI done." (Compl. 7.) Similarly, Plaintiff alleges that Medina "could of arranged a (MRI) be done on Plaintiff either at the prison or if there was not a (MRI) machine at the prison then [he] could of had the prison take [Plaintiff] to a local hospital..." (Compl. 7-8.) Plaintiff alleges that Medina was "retaliating against Plaintiff for filing a lawsuit against Defendant Medina in federal

---

[1] Citations to pages in Plaintiff's complaint will refer to page numbers as electronically docketed in PDF format and do not refer to the page numbers provided by Plaintiff.
[2] Plaintiff cites a "medical asses[s]ment done on 1-6-9" but it is unclear why. (Compl. 7.) Plaintiff vaguely writes: "Assessment (4) seizure activity." (Compl. 7.)

1  court...." (Compl. 8.)

2      At some unspecified point in time, Plaintiff was transferred to CCI-Tehachapi. (Compl.
3  8.) Upon his arrival, Plaintiff contacted a nurse and explained that his tooth was in excruciating
4  pain "and about the (MRI)." (Compl. 8-9.) The nurse told Plaintiff that he would have to wait
5  because she was not a dentist and could not help him, then walked away. (Compl. 9.)

6      On February 19, 2009, Plaintiff was seen by a doctor at the clinic and was told that he
7  could not do anything until "medical cleared [Plaintiff] and [Plaintiff] get[s] the MRI." (Compl.
8  9.) On March 1, 2009, Plaintiff saw Dr. Brian Grimm in the clinic and told him about the pain
9  and swelling in his mouth. (Compl. 9.) Plaintiff asked for clearance to receive the tooth
10 extraction or for an MRI. (Compl. 9.) Grimm told Plaintiff that he needed to receive an MRI
11 first because of the risk that Plaintiff has a seizure while on the examination chair. (Compl. 9.)
12 Grim told Plaintiff to "toughen up" until he received the MRI. (Compl. 9.) On March 6, 2009,
13 Grimm again told Plaintiff he needed to get an MRI. (Compl. 9.)

14     At some point in time, Plaintiff sought assistance from the Prison Law Office. (Compl.
15 10.) Plaintiff contends that Grimm provided Plaintiff with the medical clearance after an
16 attorney from the Prison Law Office pressured prison officials to provide Plaintiff with
17 treatment. (Compl. 10.) Plaintiff suggests that Grimm's statements about needing an MRI were
18 fabricated because Plaintiff received clearance for the extraction procedure without an MRI after
19 the Prison Law Office became involved. (Compl. 10.) Plaintiff contends that the extraction
20 procedure was delayed for 84 days because of the MRI excuse. (Compl. 10.)

21     On March 9, 2009, the right side of Plaintiff's mouth and his gums were swollen and
22 infected. Plaintiff was taken to the clinic and seen by Dr. Haggar. Haggar took x-rays and told
23 Plaintiff that he had a gum infection and that his tooth "is cracking a lot more." (Compl. 11.)
24 Haggar contacted his supervisor, Jeff Matthews, and they told Plaintiff that he needed to receive
25 an MRI before he received clearance. (Compl. 11.) Haggar marked Plaintiff's treatment as
26 "priority 1-B." (Compl. 11.) Plaintiff contends Matthews "did nothing to get [Plaintiff] this
27 MRI." (Compl. 11.)

28 / / /

4

On March 16, 2009, Plaintiff filed an emergency grievance concerning his dental issue. (Compl. 12.)

On March 19, 2009, a dental assistant approached Plaintiff in his cell and asked if he needed to go to the dental clinic. (Compl .12.) Plaintiff was taken to the clinic and asked to sign a consent form to receive the tooth extraction. (Compl. 13.) Plaintiff was told that the chief medical officer called the dentist, Dr. Nakayama, and told him to provide Plaintiff with the procedure. (Compl. 13.) Dr. Nakayama did not know anything about the MRI issues. (Compl. 13.)

## IV.

## DISCUSSION

### A. Plaintiff's Eighth Amendment Claims

Plaintiff contends that Defendants violated his rights under the Eighth Amendment because of the delays associated with his tooth extraction. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to

5

respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id.

Plaintiff alleges that prison officials delayed a tooth extraction procedure for 84 days because they wanted to screen Plaintiff for seizure disorders via an MRI before clearing Plaintiff for the procedure. Plaintiff does not dispute that he had seizures in the past. Further, Plaintiff does not allege any facts that dispute or challenge Defendants' statements that seizure disorder could produce complications during the tooth extraction procedure. Instead, Plaintiff's claims rest on his inference that Defendants' deliberate indifference is evidenced by the fact that, after the Prison Law Office intervened on Plaintiff's behalf, Defendants' relented from their position and opted to perform the tooth extraction procedure without pre-screening Plaintiff with an MRI.

Plaintiff's claims presently fail because Plaintiff does not allege facts that plausibly support the conclusion that Defendants' acted with deliberate indifference. First, Plaintiff's factual allegations are unclear and illogical. Plaintiff alleges that initially Dr. Hoag told Plaintiff that he needed to get approval for the tooth extraction because he had a history of seizures. Plaintiff then alleges that Medina told Plaintiff that he would not provide the necessary clearance because Plaintiff's medical file did not mention any history of seizures. Plaintiff goes on to allege that he needed to receive an MRI to determine whether Plaintiff had a seizure disorder before he receives any dental work. This series of allegations makes no logical sense. If Medina believed Plaintiff did not have a history of seizures, it is unclear why Medina withheld clearance or why Plaintiff would need an MRI. While additional facts may make the assertions logical, the present state of the complaint does not afford the Court that opportunity, especially in the area of causation.

Second, a mere difference of medical opinion does not rise to the level of an Eighth Amendment violation. Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004). At most, the facts show that Defendants' weighed the risks between two options, performing the tooth extraction immediately versus waiting for an MRI. The mere fact that Defendants' opted to go one route and later changed their minds (due to pressure from the Prison Law Office) does not exhibit deliberate indifference. In order to violate the Eighth Amendment, Plaintiff must allege

facts that plausibly support the conclusion that Defendants' chosen course of treatment was medically unacceptable under the circumstances and was chosen by Defendants in conscious disregard of an excessive risk to Plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  Plaintiff does not allege facts which plausibly support the conclusion that it was medically unacceptable for Defendants to opt to wait for an MRI before performing the tooth extraction.  The fact that the same course of treatment (waiting for MRI results to determine whether Plaintiff had a seizure disorder) was recommended and followed by multiple physicians in two separate prison facilities suggests that waiting for an MRI was not medically unacceptable under the circumstances.

Third, Plaintiff does not allege facts that plausibly support the conclusion that any individual Defendant deliberately delayed the MRI or the tooth extraction to maliciously cause Plaintiff pain.  Plaintiff alleges that his tooth extraction was delayed for 84 days, but also alleges that he was transferred to a different prison in the interim.  Plaintiff does not allege any facts that plausibly support the conclusion that any individual Defendant knew that further treatment would be delayed for so long or that Plaintiff was going to be transferred in the interim, causing further delays.

Accordingly, Plaintiff presently fails to state any claims under the Eighth Amendment.

### B.    Plaintiff's Retaliation Claims

Plaintiff alleges, in conclusory fashion, that Defendant Medina was "retaliating against Plaintiff for filing a lawsuit against Defendant Medina in federal court violating [Plaintiff's] 1st Amendment rights." (Compl. 8.)  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).  "Protected conduct" includes the First Amendment right to pursue civil rights litigation in the courts." Id. at 567.

Plaintiff does not allege sufficient facts to support his retaliation claim.  The facts alleged

do not plausibly support the conclusion that Defendant Medina took "adverse action" against Plaintiff. Plaintiff contends that Defendant Medina told Plaintiff that he needed to be screened for seizures before receiving a tooth extraction. However, as discussed above, this is the same course of treatment recommended by other doctors at two separate prison facilities. Plaintiff fails to explain how this recommended course of treatment was adverse. The facts do not plausibly support the conclusion that Defendant Medina chose this course of treatment to deliberately delay Plaintiff's treatment.

Moreover, Plaintiff does not allege facts that plausibly support the conclusion that Defendant Medina took action against Plaintiff "because of" Plaintiff's exercise of protected conduct. Plaintiff does not allege any facts that support the conclusion that Defendant Medina's actions was a direct response to Plaintiff's lawsuit. Plaintiff does not identify when this prior lawsuit was filed, what the subject of the prior lawsuit was, whether Defendant Medina was even aware of this prior lawsuit at the time, or any other facts establishing a causal connection between the prior lawsuit and Defendant Medina's actions.

Based upon the foregoing, Plaintiff fails to state any cognizable retaliation claims.

### C. Individualized Inquiry into Causation

Plaintiff names several individuals as defendants without alleging facts that show how they caused or contributed to Plaintiff's injuries. In order to state a claim against each individual defendant, Plaintiff must "plead that each Government-official defendant, through the official's own individual actions" violated Plaintiff's constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). With respect to supervisory officials such as warden, those officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Id.

Plaintiff fails to allege facts that show how some of the individual defendants caused or contributed to Plaintiff's alleged injuries. For example, the complaint contains little-to-no factual detail regarding how the unnamed warden at CCI-Tehachapi or Defendants Hopson, Lowen and Swingle personally participated in the events described in the complaint. Accordingly, Plaintiff's complaint fails to state any cognizable claims against these defendants.

# V.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's complaint fails to state any cognizable claims. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff's complaint, dated May 16, 2011, is dismissed for failure to state a claim upon which relief may be granted;
3. If Plaintiff wishes to amend, he must file an amended complaint within **thirty (30) days** from the date of service of this order; and

//
//
//

4        If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:  **July 2, 2013**

UNITED STATES MAGISTRATE JUDGE